IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DON DENNE and PHILIP KING,<br><br>    Plaintiffs,<br><br>v.<br><br>SALT LAKE CITY,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:23-cv-00779-JNP-JCB<br><br>District Judge Jill N. Parrish |

Plaintiffs Don Denne and Philip King were employed by Defendant Salt Lake City in different capacities, Mr. Denne as a fleet mechanic for the City's Department of Airports and Mr. King as a golf professional at one of the City's golf courses. In 2021, the two men faced discipline for violations of workplace policies—demotion for inappropriate language and conduct in the case of Mr. Denne and termination for failing to report a cash shortage (and for accepting cash payments despite City policy to the contrary) in the case of Mr. King. In line with the City's discipline policy, each received written notice of the City's allegations and had an opportunity to present his side of the story before discipline was imposed. And after discipline was imposed, each was offered (and each pursued) two levels of appeal—first a director appeal, then a hearing-officer appeal. Both were ultimately disciplined.

They now sue the City for violations of the Due Process Clause of the Fourteenth Amendment. Specifically, they claim that the post-determination process under the City's policies was constitutionally inadequate both facially and as applied to them. (They also raise a substantive

due-process challenge based on what they see as misrepresentations by the City at various points during the determination process.) The parties have filed cross-motions for summary judgment.

As explained below, Plaintiffs received more than sufficient process, and their substantive challenge is based on allegations not borne out by the record. Accordingly, the court GRANTS the City's motion for summary judgment and DENIES Plaintiffs' motion for summary judgment.

## BACKGROUND[1]

Plaintiff Don Denne worked as a fleet-mechanic service manager for the Salt Lake City Department of Airports. In that position, he held supervisory authority over a team of fleet mechanics. In March 2021, he got into a verbal altercation with one member of his team, Greg Lund, during which Mr. Lund fell and started shaking on the floor. Mr. Lund reported the incident to Mr. Denne's supervisor, Eric Nawrocki, and to an officer with the City's Department of Human Resources, Dave Buchanan. When he learned about the altercation, Mr. Nawrocki immediately requested written statements from the employees who had witnessed the incident. Mr. Buchanan then conducted an administrative investigation.[2]

---

[1] The majority of the background is based on the decisions of the hearing officers in each of the Plaintiffs' cases and the transcripts of the proceedings before those hearing officers (the second level of appeal in the post-determination process). Plaintiffs object to the hearing-officer decisions on the ground that the entire post-determination process was infected with due-process violations, but they provide no other evidence for the court's consideration. For the reasons explained below, no due-process violations occurred, so the court freely relies on the hearing-officer decisions and the transcripts of the proceedings before those officers.

[2] Mr. Denne objects to Mr. Buchanan's report and any facts contained in it on the ground that the report was based largely on anonymous-witness hearsay. Although these features of the report do not necessarily result in due-process violations, the court is sympathetic to Mr. Denne's argument on this point and therefore does not recount facts contained only in the report. Suffice it to say that in preparing his report, Mr. Buchanan interviewed Mr. Denne and Mr. Lund, among several others.

Based on Mr. Buchanan's investigative report, Mr. Nawrocki issued Mr. Denne a predetermination notice a few months later in September. The notice, which was based on the administrative investigation, first stated that Mr. Denne had allegedly "engaged in unprofessional, inappropriate, discourteous, and disrespectful conduct," and provided details of the incident with Mr. Lund as well as details from Mr. Denne's conversations with other subordinates. ECF No. 23-19, at 1–4. It explained that in the City's view, based on the allegations, Mr. Denne had violated various City policies, including Policy 3.05.01 (Standards of Conduct), Policy 3.05.02 (Supervisor Standards and Responsibilities), Policy 3.05.05 (Violence in the Workplace), and Policy 3.05.04 (Anti-Discrimination and Harassment). The notice warned Mr. Denne that the City was considering discipline, including termination. It also invited Mr. Denne to respond to the allegations at a hearing scheduled for later that month and informed him that he could bring counsel and any mitigating evidence he wished his supervisor to consider to that hearing. Mr. Denne appeared at the hearing with his attorney and provided an oral response to the allegations. In January 2022, Mr. Nawrocki issued a written decision finding that Mr. Denne violated several workplace policies and demoted him accordingly.

Mr. Denne then filed for what the City calls a director appeal, the first level of post-determination review. At this hearing, which took place in February, Mr. Denne once again appeared with counsel and provided an oral response. The hearing officer upheld the decision to demote Mr. Denne, and Mr. Denne filed for a so-called hearing-officer appeal, the second and final level of post-determination review.

It took the City about eight months to assign a hearing officer, and the second-level hearing took place early March 2023. Mr. Denne disclosed thirteen witnesses in advance, though he called only four of them at the hearing, including himself and three fleet-mechanic employees. (He did

3

not make any effort to call the remaining witnesses.) The City called Mr. Buchanan, who testified about the administrative investigation he conducted and relayed what the anonymous witnesses had told him during that investigation, as well as Mr. Nawrocki (who presided over the predetermination hearing) and the officer who presided over the director appeal. Mr. Denne cross-examined each of the City's witnesses. The hearing officer for this second-level post-determination hearing issued a decision finding that substantial evidence supported the City's finding that Mr. Denne had violated workplace policies, and he affirmed the discipline decision accordingly. The officer specifically noted that the evidence provided through Mr. Denne and his witnesses alone was enough to uphold the demotion decision. That is, the outcome of the hearing-officer appeal would have been the same even if the City had not provided any evidence of its own.

Mr. King, for his part, began working as the interim head golf professional for Salt Lake City's Rose Park Golf Course in summer 2020. In that role, he was responsible for all clubhouse operations, including accounting for cash flows. Soon after he started at Rose Park, he discovered that the safe was short about $500 but did not report his discovery as he was required to do. The shortage grew to roughly $700 by February 2021.

The City's Golf Administration learned of the cash shortages in February 2021 when a new permanent employee took over Mr. King's interim job. The City then appointed two employees of the Golf Division to conduct an administrative investigation. The investigation revealed that Mr. King had also been accepting cash payments from customers despite the City's strict COVID-era policy of not accepting cash payments. (A separate investigation by the police determined that no probable cause existed to charge anyone with theft.)

Like with Mr. Denne, the City issued Mr. King a predetermination notice explaining the allegations and the City policies he may have violated, including the one requiring golf

4

professionals, "[w]henever funds are discovered to be missing," to "report this immediately to the Policy Department and the Golf Director." ECF No. 23-5, at 4. The notice informed Mr. King that the City was considering discipline, including termination, and that he could appear with counsel at a hearing scheduled for a few days later to present any mitigating evidence he wished to. Mr. King appeared at the hearing with counsel and responded to the allegations through his own oral statements and argument of his counsel. He admitted that he was aware of the cash shortages and yet did not report the issue, explaining that he thought the administration already knew about the it and that he was trying to resolve it on his own. He also admitted that he accepted cash payments and explained that he thought it would be good customer service to do so. The hearing officer, Matthew Kammeyer, issued a written decision finding that Mr. King had violated several City policies and terminated his employment accordingly.

Mr. King filed for a director appeal, which was held October 2021. Once again, Mr. King appeared with his counsel and provided testimony. The officer presiding over this first-level post-termination appeal upheld the termination, and Mr. King filed for a second-level hearing-officer appeal.

Not until early 2023 was the City able to assign a hearing officer, and the hearing was finally scheduled for April 2023. Mr. King disclosed 13 witnesses, including the two employees who conducted the City's investigation, along with several exhibits that the City stipulated to. At the hearing, though, Mr. King called only two witnesses, one of which was himself. (He did not make any effort to call the others.) The City called and Mr. King cross-examined Mr. Kammeyer, the officer who had presided over the predetermination hearing and made the decision to terminate Mr. King's employment. During his own testimony, Mr. King once again admitted the allegations underlying the termination decision—that he failed to report the cash shortage and that he accepted

cash payments. The hearing officer for this appeal issued a written decision affirming the City's decision to terminate Mr. King's employment.

At all times, the process Mr. Denne and Mr. King received complied with Salt Lake City Code 2.24. Their challenge here focuses on the second-level post-determination process the City provided them.

## ANALYSIS

The court must grant summary judgment on a claim or part of a claim when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In applying this standard, the court must always view the facts "in the light most favorable to the non-moving party[,] draw[ing] all reasonable inferences in [its] favor." *Osborne v. Baxter Healthcare Corp.*, 798 F.3d 1260, 1266 (10th Cir. 2015). When the parties have filed cross-motions for summary judgment, the court "must view each motion separately, in the light most favorable to the non-moving party." *Fox v. Transam Leasing, Inc.*, 839 F.3d 1209, 1213 (10th Cir. 2016) (internal quotation marks omitted). Conveniently here, the parties agree on the essential facts, so resolving the cross-motions for summary judgment involves pure questions of law—whether the process that the City provided Plaintiffs during their second-level post-determination appeal satisfied the requirements of the Due Process Clause (for the procedural challenge), and whether the City's alleged misrepresentations violated the substantive aspect of the same Due Process Clause (for the substantive challenge). The court considers first their procedural challenge.

The Due Process Clause of the Fourteenth Amendment prohibits the States from depriving "any person" of "life, liberty, or property[] without due process of law." U.S. CONST. amend. XIV § 1. Initially, the court notes that in a public-employment context like the one here, no process is

6

due unless the individual bringing the claim has a property interest protected by the Clause. *Garcia v. City of Albuquerque*, 232 F.3d 760, 769 (10th Cir. 2000). The parties agree that Mr. Denne and Mr. King both had a protected property interest in their public employment, so the question is "whether the government afforded [them] an appropriate level of process." *Id.*

What process is due "is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (internal quotation marks omitted). More specifically, determining the appropriate level of process "requires analysis of the governmental and private interests that are affected": that is, "the private interest that will be affected by the official action," "the risk of an erroneous deprivation of such interest through the procedures used," and "the Government's interest, including the function involved and the fiscal and administrative burdens that . . . additional or substitute procedural requirement[s] would entail." *Id.* at 334–35.

In the context of termination from public employment, the balance of the interests first requires "some form of pretermination hearing" in which the employee receives "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 546 (1985). This hearing "need not be elaborate," serving merely as "an initial check against mistaken decisions." *Id.* at 545. For instance, even oral notice of the charges during a face-to-face confrontation along with an opportunity to respond in the moment can suffice. *See Powell v. Mikulecky*, 891 F.2d 1454, 1459 (10th Cir. 1989).

The balance of the interests also requires a post-termination hearing with "more formal due process protections." *Id.* at 1458. Although a post-termination hearing need not replicate a judicial hearing, the terminated employee should have the right to representation by an attorney and a

7

chance to call witnesses, introduce other evidence on his behalf, and cross-examine adverse witnesses. *Id.* at 1459–60; *McClure v. Indep. Sch. Dist. No. 16*, 228 F.3d 1205, 1211 (10th Cir. 2000). As with due-process protections in a judicial setting, the due-process protections required in the post-termination administrative hearing can be waived. For example, a terminated employee who makes no effort to secure the presence of adverse witnesses whose testimony is presented only through affidavits or hearsay cannot subsequently complain that he was deprived of his right to cross-examine adverse witnesses. *See McClure*, 228 F.3d at 1212.

The pretermination and post-termination processes work hand in hand, so courts "must evaluate the constitutionality of [either one] in light of the [other]." *Benavidez v. City of Albuquerque*, 101 F.3d 620, 626 (10th Cir. 1996). "When the pre-termination process offers little or no opportunity for the employee to present his side of the case, the procedures in the post-termination hearing become much more important." *Id.* On the other hand, when the post-termination process is extensive, even minimal pretermination process suffices. Note that these due-process guideposts apply to employees who are *terminated* from public employment; employees who are demoted rather than terminated may be entitled to less process. *See DelSignore v. DiCenzo*, 767 F. Supp. 423, 427 (D.R.I. 1991) ("[A plaintiff's] interest in retaining his rank is not as compelling as the interest of . . . an employee who is actually fired . . . .").

As noted above, Plaintiffs bring both a facial challenge and an as-applied challenge for procedural violations of the Due Process Clause. The court begins with their as-applied challenge because a successful as-applied challenge is a necessary ingredient of a successful facial challenge. *United States v. Streett*, 434 F. Supp. 3d 1125, 1172 (D.N.M. 2020).

Consider first the front-end predetermination process the City gave Mr. Denne and Mr. King. Each of them received a written notice stating the alleged conduct or statements at issue

8

along with the City policies that the conduct or statements allegedly violated. The notice invited its recipient to attend a hearing with counsel scheduled several days out to present mitigating evidence. And each Plaintiff in fact attended his respective hearing with his attorney present. Plaintiffs do not challenge this predetermination process, and for very good reason: it far exceeded the constitutional minimum. (Recall that even oral notice with a short opportunity to respond without any time for preparation can suffice. *See Powell*, 891 F.2d at 1459.)

Now turn to the back-end post-determination process Plaintiffs received, keeping in mind that the robust front-end process relaxes the back-end requirements. Each Plaintiff participated in two levels of post-determination hearings. The court focuses on the second level—the hearing-officer appeal—where the process was more formal. (That appeal is the focus of Plaintiffs' attack, and if the process there was constitutionally sufficient, then the first-level post-determination hearing does not matter. *See Judkins v. Jenkins*, 996 F. Supp. 2d 1155, 1169 (D. Utah 2014).) At their respective hearing-officer appeals, Plaintiffs—represented by counsel—were given the chance to call their own witnesses, cross-examine the City's witnesses, and present argument. The Due Process Clause required nothing more, especially given the extensive predetermination process they received. *See id.* (finding no constitutional violation where the plaintiff received sufficient process during her pretermination hearing, received notice of her post-termination hearing with adequate time to prepare for it, was invited to speak and call witnesses, and was allowed representation by counsel).

Plaintiffs resist this straightforward application of the caselaw, arguing that the process for their hearing-officer appeal was nonetheless constitutionally deficient because (1) Plaintiffs bore the burden of disproving the allegations against them instead of the City bearing the burden of proving the allegations; (2) the hearing officer was limited to considering evidence that was

9

previously presented, evidence that was largely in the City's control; and (3) the admission of hearsay evidence prevented them from cross-examining adverse witnesses.

The first argument is easily rejected. Initially, the court notes that "no controlling authority . . . support[s] the[] argument that the Fourteenth Amendment forbids public employers from placing the burden of proof on [disciplined] employees." *Benavidez*, 101 F.3d at 625. Whether placing the burden of proof on the disciplined employee violates the Due Process Clause depends on the nature and extent of the pre- and post-determination processes provided. When the pre- and post-termination processes are otherwise robust, it is less likely that allocating the burden of proof to the employee offends due process.

Here, as noted above, Plaintiffs received extensive predetermination process. So, they were entitled only to "some opportunity" to present their views in their post-determination hearings. *Id.* at 627. But they received much more than just some opportunity to present their views at their post-determination hearings: they were represented by counsel, they called witnesses, and they cross-examined adverse witnesses. Under these circumstances, "placing the burden of proof on [them] in their post-[de]termination administrative hearings did not violate the Fourteenth Amendment's Due Process Clause." *Id.* at 625.

Plaintiffs' second and third arguments are related. Essentially, they complain that the City's policies allow it to withhold discovery and hearsay-witness identities from Plaintiffs, thereby hindering their ability to challenge the evidence (both documentary and testimonial) underlying the allegations against them. In their view, these policies are especially unfair given the City's power to subpoena witnesses favorable to it. (Plaintiffs lack this subpoena power.) But "[their] complaints about a lack of . . . discovery assume that there is such an entitlement, which there isn't." *Batagiannis v. W. Lafayette Comm. Sch. Corp.*, 454 F.3d 738, 742 (7th Cir. 2006). And

"[h]earsay is regularly used in administrative adjudication" without offending the Constitution. *Vladimirov v. Lynch*, 805 F.3d 955, 964 (10th Cir. 2015) (internal quotation marks omitted).

That said, it is possible that a complete denial of discovery or an exclusive reliance on hearsay witnesses could lead to a due-process violation if it "can be shown to have caused clear prejudice." *Lopez v. United States*, 129 F. Supp. 2d 1284, 1289 (D.N.M. 2000). However, Plaintiffs cannot show any prejudice here. To begin, Plaintiffs made no effort to secure the presence of numerous witnesses on their own lists. So, they cannot now complain about their lack of subpoena power. Next, Mr. Denne, for his part, knew from the context of the hearsay statements contained in Mr. Buchanan's administrative-investigation report who most of the hearsay witnesses were, yet he made no effort to seek their attendance at his hearing. Not only that, but his hearing officer specifically found that his own witnesses presented evidence that would have by itself supported the decision to demote him. And Mr. King repeatedly admitted the essential facts underlying his termination (that he failed to report the cash shortage and that he accepted cash payments), so it is unclear how cross-examination could have benefitted him. Plaintiffs cannot now complain that they did not get a chance to cross-examine certain witnesses. *See McClure*, 228 at 1212 (noting that a plaintiff can "waive[] her right to complain [about not getting a chance to cross-examine witnesses] when she d[oes] not seek the attendance of the missing witness[es] at the hearing and [i]s not restricted from doing so . . . [or when she] admit[s] facts that ma[k]e cross-examination unnecessary"); *see also Meder v. City of Okla. City*, 869 F.2d 553, 555 (10th Cir. 1989) ("[Plaintiff] does not explain . . . how confrontation and cross-examination would have changed the board's inference that the[] two admitted facts were reasonably related."), *abrogated on other grounds*, *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999).

Plaintiffs' as-applied procedural due-process challenge fails, so their facial challenge must fail with it. *Streett*, 434 F. Supp. 3d at 1172. A quick word about their substantive due-process challenge will do. Whereas procedural due process "ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision," substantive due process "guarantees that the state will not deprive a person of those rights for an arbitrary reason regardless of how fair the procedures are." *Archuleta v. Colo. Dep't of Insts.*, 936 F.2d 483, 490 (10th Cir. 1991).

Plaintiffs' complaint alleges that the City conducted sham investigations, lied about Plaintiffs' actions to the hearing officers, and lied to Plaintiffs about the status of their appeals, causing Plaintiffs to lose their livelihoods. The court need not assess whether Plaintiffs' allegations if true would point to a constitutional violation because the allegations are entirely unsupported by the record. Nothing suggests that the City's investigations were sham. Plaintiffs argue that they were sham because the entire process was compromised by due-process violations, but as explained above, the process was more than adequate. Next, Plaintiffs themselves admitted (or their witnesses admitted) the essential facts underlying their disciplinary actions, so it is hard to see how the City lied to the hearing officers about what Plaintiffs did (or, if the City did lie, how Plaintiffs lost their jobs because of those lies). And finally, even if the City lied to Plaintiffs about the status of their hearing-officer appeals, they cannot show that they were injured by those lies.

## CONCLUSION AND ORDER

For the reasons above, the court **GRANTS** the City's motion for summary judgment and **DENIES** Plaintiffs' motion for summary judgment.

Signed August 14, 2025.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge
